IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTHA SCOTT, individually and as a representative of the ESTATE OF DAVID SCOTT; ESTATE OF DAVID SCOTT; ROBIN DENISE BRYANT as next friend of IAN CHASE SCOTT, a minor, and ALYESSA LYNN SCOTT, a minor, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-06-1436 |
| CYPRESS CREEK EMERGENCY MEDICAL SERVICES; HARRIS COUNTY, TEXAS; JESUS ELIAS, individually and in an official capacity; KEVIN TRAYNOR, individually and in an official capacity; BROOK RAMSEY individually and in an official capacity; RAUL VENEGAS, individually and in an official capacity; HARRIS COUNTY EMERGENCY SERVICES DISTRICT NUMBER 11; and JOHN DOES, individually and in official capacities; | § | |
| Defendants. | § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] is Defendant Deputy Raul Venegas's Motion to Dismiss, Docket Entry No. 34.[2] The court has considered the motion, all relevant filings and the applicable law. For the

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 14.

[2] The court reserves judgment on the issue of standing raised in Defendant Venegas's recently filed amended motion to dismiss. All other arguments in the amended motion are give due consideration herein.

reasons set forth below, the court **RECOMMENDS** that the motion filed by Venegas be **GRANTED IN PART** and **DENIED IN PART.**

## I. Case Background

A. Factual History

The incident that gives rise to these claims occurred over three years ago. The account given here is taken entirely from Plaintiffs' Second Amended Original Complaint.

On May 17, 2004, Harris County Sheriff's Deputy Raul Venegas ("Venegas") and Detective J.L. Smith arrived at the home of Plaintiff Martha Scott to serve a warrant on David Scott ("David") for missing a court appearance.[3] At the scene, the officers found David in the bathroom holding a gun to his chest and threatening suicide. After additional officers arrived, David announced that he had ingested antifreeze. According to Plaintiffs' complaint, antifreeze contains ethylene glycol, which they state is a known poison.

Upon receiving a call for emergency medical services, Defendant CCEMS sent an ambulance to the scene. Kevin Traynor, a CCEMS employee, advised Venegas and other officers that David would require further medical attention and evaluation because of his claim of having ingested antifreeze and his threatened suicide. Kevin Traynor, however, neither treated David for antifreeze

[3] David's original court date concerned a charge of possession of less than one gram of a controlled substance. Plaintiffs' Second Amended Complaint, Docket Entry No. 57, ¶ 15.

poisoning nor transported him to a hospital. Instead, Venegas transported David in a squad car to Defendant Harris County's downtown jail.

At the jail, David did not receive medical treatment until officers found him unconscious in his cell, at which time he was transported to LBJ Hospital. Plaintiffs allege that hospital personnel were not advised of David's earlier proclamation that he had ingested antifreeze, and instead may have been misled to presume that David was suffering from cocaine intoxication. The delayed diagnosis created a situation in which the widely accepted treatment was no longer effective. A few days after being admitted to LBJ Hospital, David died of ethylene glycol poisoning.

B. Procedural History

On April 26, 2006, Plaintiffs, who consist of David's mother, the estate, and his children, filed this suit against three officers at the scene (Jesus Elias, J.L Smith and Venegas), the county, a political subdivision of the state that contracted with CCEMS (HCESD No. 11), the emergency medical technicians (Kevin Traynor and Brook Ramsey), and CCEMS.

Plaintiffs, on behalf of themselves and David, initiated this civil rights action under 42 U.S.C. § 1983[4] ("Section 1983")

---

[4] Section 1983 provides that:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

asserting that Defendants violated David's "Fourteenth Amendment right not to have his serious medical needs met with deliberate indifference."[5] Plaintiffs also raise a claim pursuant to 42 U.S.C. § 1985(3)[6] alleging that Defendants conspired to deprive David of his right to be free from unreasonable search and seizure. In addition to the federal constitutional claims, Plaintiffs raised an Americans with Disabilities Act[7] claim, a state wrongful death claim, and a claim for intentional infliction of emotional distress ("IIED").

On July 25, 2006, in "the hope of lessening the Court's displeasure [with the] procedurally unsatisfying early course of events," Plaintiffs filed a motion to delay the initial conference.[8] In their motion, Plaintiffs stated that defendants Harris County, Jesus Elias, and Venegas had not been served due to the "insufficiency" of one process server, and the "abrupt

equity, or other proper proceeding for redress . . . .

A plaintiff can establish a prima facie case under Section 1983 by alleging 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law. Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).

5 Plaintiffs' Second Amended Original Complaint, Docket Entry No. 57, ¶ 37.

6 The elements of a 42 U.S.C. § 1985(3) cause of action are: (1) a conspiracy (2) motivated by racial or class based discriminatory animus designed to deprive any person or class of persons of the equal protections of the law, (3) an act in furtherance of the conspiracy, and (4) an injury. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

7 42 U.S.C. §§ 12101-12213.

8 Plaintiffs' Motion to Delay Initial Conference Docket Entry No. 12.

withdraw[al]" of another.[9] Plaintiffs further stated that "the assignment to a server to serve [the remaining] defendants **instanter** [was] being made with the filing of the motion, and that the conference [might] productively be re-set merely by a week or two."[10] On July 26, 2006, Plaintiffs' motion to delay the initial conference was granted.

Defendants Harris County and Jesus Elias were subsequently served on July 27, 2006, and July 31, 2006, respectively. Venegas, however, was not served until December 13, 2006, 140 days after Plaintiffs' motion to delay the initial conference was granted, and 231 days after the original complaint was filed.

On January 11, 2007, pursuant to Federal Rule 12(b)(6), Venegas filed a motion to dismiss for failure to state a claim upon which relief can be granted.

## II. Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts, but need "not strain to find inferences favorable to the plaintiff[s]." Cornish v. Corr.

---

[9] Id. at ¶¶ 3, 4.

[10] Id. at ¶¶ 6, 10; (emphasis in original)(internal quotation marks omitted).

Servs. Corp., 402 F.3d 545, 548-49 (5th Cir. 2005)(quoting Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)). Dismissal of a claim is proper only when there is no doubt that the plaintiff will be unable to prove the necessary facts in support of the allegations that would entitle the plaintiff to relief. Cornish, 402 F.3d at 549; Kane Enters. v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003). A court, therefore, should dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint. See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA, 467 F.3d 466, 470 (5th Cir. 2006).

Generally, the court is limited in its review to the facts in the complaint, the documents attached or incorporated in the complaint, and any matters subject to judicial notice. Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996). If the court considers matters or documents beyond those mentioned in the pleadings, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(b); Morin v. Caire, 77 F.3d 116, 123 (5th Cir. 1996). When a motion to dismiss is converted by the court to a motion for summary judgment, all parties are to be given reasonable opportunity to present evidence and other pertinent material. Fed. R. Civ. P. 12(b).

**III. Analysis**

Venegas's pending motion to dismiss raises a variety of legal challenges to Plaintiffs' complaint, including, inter alia, failure to serve process within the statute of limitations, failure to state a claim, and qualified and official immunity. The court addresses these issues in turn.

**A. Service of Process**

In his motion, Venegas challenges Plaintiffs' complaint as barred by the statute of limitations as a result of untimely service of process. Venegas contends that because he was served outside the statute of limitations, the Plaintiffs must show that they used "due diligence" in attempting to perfect service in order to relate the service date back to the date of filing. In support of his claim, Venegas relies on state law requiring that for a suit to be timely brought, a plaintiff must have filed the complaint within the limitations period and used due diligence in making any attempts at service beyond the limitations period. Rigo Mfg. Co. v. Thomas, 458 S.W.2d 180 (Tex. 1970).

In response, Plaintiffs argue that Venegas was not prejudiced by the late service of process, that he had knowledge of the pending action, and that Plaintiffs did use due diligence in attempting to serve Venegas. In support of their claim of due diligence, Plaintiffs state that, in the 140 days since the motion to delay the initial conference, they hired a third process server, requested that the Sheriff serve his own deputy, and found a phone

number for a family member of Venegas through "an internet search page."

Since Walker v. Armco Steel, 446 U.S. 740, 751 (1980), it has been well established that state law claims filed in federal courts are governed by the applicable state statute of limitations. See also Calhoun v. Ford, 626 F.2d 576, 577 (5th Cir. 1980). Under Texas law, compliance with the statute of limitations requires a plaintiff to timely file suit and use "due diligence" if procuring service outside the limitations period. Tranter v. Duemling, 129 S.W.3d 257, 259 (Tex. App.—El Palso 2004, no pet.). Any attempts at service made after the statute of limitations has expired cannot be related back to the date the petition was filed unless the plaintiff has consistently exercised due diligence. Id.; Tate v. Beals, 119 S.W.3d 378, 380 (Tex. App.—Fort Worth 2003, pet. denied). Although due diligence is typically a matter of fact, "a lack of due diligence may be found as a matter of law if the plaintiff offers no excuse for his failure to procure service, or if the plaintiff's excuse conclusively negates diligence." Saenz v. Keller Indus. of Tex. Inc., 951 F.2d 665, 667 (5th Cir. 1992) (citing Perry v. Kroger Stores, Store No. 119, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no writ)). The existence of due diligence is determined by looking at the amount of effort a plaintiff expended in procuring service and the time it took him to do so.

Webster v. Thomas, 5 S.W.3d 287, 290 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

As the incident that gives rise to the claims against Venegas occurred on May 17, 2004, Plaintiffs' statute of limitations ran two years later on May 17, 2006.[11] Venegas, however, was not served until December 13, 2006, 210 days after the limitations period expired. Plaintiffs' attempts to justify late service fail to adequately account for the six and a half months since the running of the statute of limitations, thus conclusively establishing a lack of due diligence as a matter of law. Cf. Parsons v. Turley, 109 S.W.3d 804, 809 (Tex. App.—Dallas 2003, pet. denied) (finding the plaintiff's reliance on a verbal agreement to postpone service inadequate as a matter of law to justify a three-month delay). Accordingly, the date of service does not relate back to the filing date and, thus, Plaintiffs' state law claims are barred by the state statute of limitations and properly dismissed under Rule 12(b)(6).

The Fifth Circuit, however, has held that the Texas rule requiring due diligence to toll the statute of limitations does not apply to federal claims. Gonzales v. Wyatt, 157 F.3d 1016, 1021 (5th Cir. 1998). "While state law controls [federal claims] as to the time within which an action must be begun, the manner in which

---

[11] In their response to Venegas's motion to dismiss, Plaintiffs state the applicable statute of limitations to be two years and make no argument that it is otherwise tolled. Plaintiffs' answer to defendant Raul Venegas' motion to dismiss, Docket Entry No. 46, ¶ 17.

it is commenced and when it is deemed to have begun, being procedural and not substantive, is covered by the Federal Rules of Civil Procedure." Jackson v. Duke, 259 F.2d 3, 6 (5th Cir. 1958); (citing Mohler v. Miller, 235 F.2d 153 (6th Cir. 1956)). Moreover, the Supreme Court held in West v. Conrail, 481 U.S. 35 (1987) that "when an underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with [Federal] Rule [of Civil Procedure] 3 within the borrowed period." See also McGuire v. Turnbo, 137 F.3d 321, 324 (5th Cir. 1998)(noting that Section 1983 actions do not import the due diligence requirements of Texas law).

Thus, although 42 U.S.C. § 1983 is supplemented by Texas statute of limitations for the purpose of establishing the time within which the action must be begun, the manner in which it is commenced is governed by the Federal Rules. Pursuant to the Federal Rules, an action is commenced within the applicable limitations period if the complaint is timely filed, and service is perfected in accordance with Rule 4. See Fed. R. Civ. P. 3, 4. Because Plaintiffs' complaint was timely filed, a dismissal of the federal claims under Rule 12(b)(6) is appropriate only if Plaintiffs failed to comply with the service requirements of the Rule 4.

Under Rule 4(m), absent a showing of good cause or permission of the court, service must be made upon a defendant within 120 days of the filing of the complaint. Fed. R. Civ. P. 4(m). Rule 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Rule 4(m) establishes that a court must grant appropriate additional time to the plaintiff to serve process if he can show good cause for not perfecting service within the prescribed 120 days. Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1988). "To establish good cause, the plaintiff must demonstrate at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually do not suffice." Lindsey v. United States RRB, 101 F.3d 444, 446 (5th Cir. 1996)(quoting Peters v. United States, 9 F.3d 344, 345 (5th Cir. 1993)). If, however, the plaintiff fails to show good cause, the court shall have the discretion to grant additional time for service or dismiss the action. Thompson v. Brown, 91 F.3d 20, 21 (1996).

Venegas raises no argument that Plaintiffs failed to show good cause for late service or otherwise failed to comply with Rule

4(m). Rather, Venegas seeks dismissal of Plaintiffs' action pursuant only to Rule 12(b)(6) for failure to bring suit within the applicable statute of limitations. For a Rule 12(b)(6) motion to be granted for federal claims, however, it must be clear from the face of the complaint that Plaintiffs' action is barred by the statute of limitations as a result of the late service. See EPCO Carbon Dioxide Prods., Inc. 467 F.3d at 470.

As Plaintiffs' complaint was filed on April 26, 2006, Rule 4(m) allowed them until August 24, 2006, to effectuate service with additional time available upon a showing of "good cause." On July 25, 2006, however, Plaintiffs' specifically requested, and were granted, additional time to effectuate service of Venegas. As the duration of the additional time granted is at the discretion of the court, a violation of Rule 4(m) is not readily apparent, and a dismissal under Rule 12(b)(6) is consequently improper.

Moreover, a Rule 4(m) dismissal is only appropriate upon motion from the defendant, or on the initiative of the court after notice is given to the plaintiff. Venegas, however, fails to argue for dismissal under Rule 4(m) and makes no argument that an undue hardship is imposed by the late service warranting the court's raising the issue sua sponte. Thus, although the state claims are properly dismissed under 12(b)(6) for failure to comply with the statute of limitations, the federal claims were timely filed in compliance with the Federal Rules.

**B. Failure to State a Claim**

Venegas also moves for dismissal pursuant to Rule 12(b)(6) for failure to state a claim. Venegas' motion, however, consists solely of the legal standard for dismissal and is completely void of argument. The court finds that Plaintiffs' Second Amended Complaint does state a cogent claim for which relief may be granted and thereby denies Venegas' motion to dismiss for failure to state a claim.

**C. Official Capacity**

Venegas also moves for dismissal of the Section 1983 claim against him in his official capacity.

A Section 1983 claim against a government employee in the person's official capacity represents the same claim as one against the governmental entity. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). In such a case, the real party in interest is the entity, not the individual. Id. at 166.

The court agrees with Venegas that Section 1983 actions against officers in their official capacity should be treated as suits against the governmental entity. As Harris County is a defendant in this case, the Section 1983 claim against Venegas in his official capacity is duplicative and should be dismissed. Venegas, however, provides no legal authority for the dismissal of any other claim against him in his official capacity, and consequently, the court makes no such judgment.

**D. Qualified Immunity**

Venegas also contends that Plaintiffs failed to allege that Venegas's conduct violated any clearly established statutory or constitutional right of which a reasonable person would have known, and accordingly asserts qualified immunity.

Plaintiffs respond that David's right to reasonable medical care was clearly established at the time of David's death, and that Venegas's deliberate indifference to David's medical needs proximately caused his death.

Government officials, sued in their individual capacities, are protected by qualified immunity from Section 1983 suits for actions performed in the exercise of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Texas v. Walker, 142 F.3d 813, 818 (5th Cir. 1998). In order to overcome an assertion of qualified immunity, a plaintiff bears the initial burden of showing that the officer's conduct violated a constitutional or statutory right. Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier v. Katz, 533 U.S. 194, 201 (2001); Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003). The inquiry ends if the allegations do not support a finding of constitutionally impermissible conduct. Saucier, 533 U.S. at 201;

See also Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).

If, however, the plaintiff satisfies this initial burden, the court determines whether the right was clearly established at the time of the violation. Hope, 536 U.S. at 739; Saucier, 533 U.S. at 201; Williams, 352 F.3d at 1002; Hare v. City of Corinth, Miss., 135 F.3d 320, 325, 326 (5th Cir. 1998)[hereinafter "Hare II"]. A legal right is "clearly established" if pre-existing law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. Hope, 536 U.S. at 739; Williams, 352 F.3d at 1002-03. Ultimately, if the legal rules are sufficiently clear, then a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. See Saucier, 533 U.S. at 208; Hare II, 135 F.3d at 326.

Arrestees and pretrial detainees have a Fourteenth Amendment due process right to "be secure in [their] basic human needs, such as medical care and safety." Hare v. City of Corinth, Miss., 74 F.3d 633, 648-49 (5th Cir. 1996) [hereinafter Hare I]; see also United States v. Gonzales, 436 F.3d 560, 573 (5th Cir.); Nerren v. Livingston Police Dep't, 86 F.3d 469, 472-73 (5th Cir. 1996). A state official's "episodic act or omission"[12] violates that right if the official acts or fails to act with subjective deliberate

[12] A different standard for evaluation is used in conditions of confinement cases. See Hare I, 74 F.3d at 643, 644-45.

indifference to a detainee's needs. Jacobs v. W. Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare I, 74 F.3d at 647-48. In other words, the defendant officer must have "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare I, 74 F.3d at 650.

The deliberate indifference standard requires action or inaction that amounts to more than negligence or even gross negligence. See Thompson v. Upshur County, Tex., 245 F.3d 447, 458-459 (5th Cir. 2001); Hare I, 74 F.3d at 645, 649. Subjective intent to cause harm, which cannot be inferred from a failure to act reasonably, is required. Mace, 333 F.3d at 626; Hare I, 74 F.3d at 649; see also Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir. 2000).

> Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur.

Thompson, 245 F.3d at 458-59 (citing Hare I, 74 F.3d at 643, 649-50).

Plaintiffs allege that Venegas violated David's right to medical care by failing to provide him with immediate medical attention after taking him into custody. They allege that Venegas possessed actual knowledge that David was suicidal and claimed to

have ingested antifreeze, which they allege is widely known to cause serious harm. Also, they allege that CCEMS personnel recommended immediate medical attention. Thus, based on Plaintiffs' allegations, a jury could reasonably interpret Venegas's failure to act as a subjective intent to cause harm and, therefore, a deliberate indifference to David's medical needs. The court finds that these allegations are sufficient to state a Fourteenth Amendment due process violation.

The next step of the analysis is to determine whether the constitutional parameters were clearly established at the time of the incident, here, 2004. In 1990, the Fifth Circuit held that pretrial detainees and arrestees are entitled to "reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental interest." Nerren v. Livingston Police Dep't, 86 F.3d 469, 474 (5th Cir. 1996)(citing Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990)). Moreover, in Hare I, issued in 1996, the Fifth Circuit provided considerable shape to the law in this area, explaining prior law and clearly stating that officials will be liable for episodic acts or omissions resulting in the violation of a pretrial detainee's constitutional rights if they act with deliberate indifference to the detainee's risk of serious harm. Hare I, 74 F.3d at 650. Therefore, the law concerning pretrial detainees' right to medical care was clearly established the incident occurred in May 2004.

The final step of the qualified immunity analysis asks whether the acts of the officer, in this particular instance Venegas, were objectively unreasonable within the applicable legal context. See Saucier, 533 U.S. at 208; Hare II, 135 F.3d at 326.

As clearly established law forbids a significant delay or denial of medical attention to a detainee in critical need, for Venegas's conduct to be objectively reasonable, it must not have resulted in either a delay or a denial of medical attention. Thompson, 245 F.3d at 463. The facts as alleged by the Plaintiffs, however, indicate that Venegas transported David to a county jail over the insistence of emergency medical responders that he be taken to a hospital and that Venegas failed to take any steps to make the jailers aware of David's need of medical attention or otherwise provide him with medical care. Thus, on the facts alleged by the Plaintiffs, Venegas knew that David was suffering from an urgent medical need that would be exacerbated by delayed treatment, and should have known from the clearly established law that a total failure to obtain medical treatment amounted to deliberate indifference. Lancaster v. Monroe County, Ala., 116 F.3d 1419 (11th Cir 1997)(holding that jailers who failed to provide medical attention to a pretrial detainee suffering from chronic alcoholism were not entitled to qualified immunity).

The court finds that Plaintiffs have provided sufficient factual support for an inference that Venegas conducted himself in

an objectively unreasonable manner with regard to his duty not to act with deliberate indifference to a known risk that David could die or be seriously harmed absent immediate medical attention. Accordingly, at this stage in the proceedings, Venegas is not entitled to qualified immunity.

**E. Official Immunity**

Finally, in response to Plaintiffs' state law claims, Venegas asserts the affirmative defense of official immunity. Because the court dismisses Plaintiffs' state law claims pursuant to Rule 12(b)(6), it does not reach the merits of this argument.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that the motion filed by Defendant Venegas be **GRANTED IN PART,** as to the section 1983 claim against Venegas in his official capacity and the state law claims, and **DENIED IN PART,** as to Plaintiffs' remaining causes of action against Defendant Venegas.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas, 77002.

**SIGNED** in Houston, Texas, this 29th day of July, 2007.

Nancy K. Johnson
United States Magistrate Judge